**GABRIELLI LEVITT LLP**
Michael J. Gabrielli
michael@gabriellilaw.com
2426 Eastchester Road, Suite 201
Bronx, New York 10469
Telephone: (718) 708-5322
Facsimile: (718) 708-5966

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DENISE MASON, individually and on behalf of other similarly situated individuals, | Case No. |
| | **CLASS ACTION COMPLAINT** |
| Plaintiff, | DEMAND FOR JURY TRIAL |
| v. | |
| DIAMOND FOODS, LLC d/b/a KETTLE FOODS, INC., | |
| Defendant. | |

Denise Mason, a New York Resident ("Plaintiff"), individually and on behalf of other similarly situated individuals, allege the following Class Action Complaint against Defendant, Diamond Foods, LLC d/b/a Kettle Foods, Inc. ("Kettle Foods" or "Defendant"), upon personal knowledge as to herself and her own acts and upon information and belief as to all other matters, based upon, inter alia, the investigation made by her attorneys – as to all other matters, as follows:

## INTRODUCTION

1.      This is a consumer protection action seeking redress for, and a stop to, Defendant's unfair and deceptive practice of advertising and marketing its line of potato chips (the "Products") as "Made with Natural Ingredients" and having "No Preservatives."

2.      Specifically, the Products include, but are not limited to:

- Organic Sea Salt & Vinegar Potato Chips
- Salt & Fresh Ground Pepper Krinkle Cut Potato Chips
- Backyard Barbeque Potato Chips

- Chili Lime Potato Chips
- Buffalo Bleu Krinkle Cut Potato Chips
- Sour Cream and Onion Potato Chips
- Pepperoncini Potato Chips
- Tropical Salsa Potato Chips
- Fiery Thai Potato Chips
- Country Style Barbeque Potato Chips
- Honey Dijon Potato Chips
- New York Cheddar Potato Chips[1]

3.      Defendant's "No Preservatives" representations are false, deceptive and misleading because the Products contain the preservative, citric acid. This labeling deceives consumers into believing that they are receiving healthier preservative-free beverages even though these products cannot live up to these claims.

4.      Similarly, Defendant's "Made with Natural Ingredients" representations are false, deceptive, and misleading because the preservative, citric acid, is a synthetic compound and thus not natural. Citric acid is usually produced from certain strains of the mold *Aspergillus niger*, which is mass produced, and the application of chemical solvents such as sulfuric acid.

5.      These misrepresentations deceive consumers into thinking they are receiving healthier and "natural" potato chips, when they are not. Conscious of consumers' increased interest in more nutritious foods free of additives, and their willingness to pay more for products perceived to meet these preferences, Defendant misleadingly, illegally and deceptively seeks to capitalize on these consumer health trends.

6.      Plaintiff and those similarly situated ("Class Members") relied on Defendant's misrepresentations that the Products are natural and contain no preservatives when purchasing the Products. Plaintiff and Class Members paid a premium for the Products over comparable products that did not purport to be natural or preservative-free. Given that Plaintiff and Class Members paid a premium for the Products based on Defendant's misrepresentations that they are natural and contain no preservatives, Plaintiff and Class Members suffered an injury in the amount of the premium paid.

7.      Defendant's conduct violated and continues to violate New York General Business Law

---

[1] Discovery may demonstrate that additional Kettle Foods products are within the scope of this Complaint.

§§ 349 and 350, the consumer protection statutes of all 50 states, and the Magnuson-Moss Warranty Act. Defendant breached and continues to breach its express warranties regarding the Products. Accordingly, Plaintiff brings this action against Defendant on behalf of herself and Class Members who purchased the Products during the applicable statute of limitations period (the "Class Period").

## JURISDICTION AND VENUE

8.     This Court has original jurisdiction over the claims asserted herein individually and on behalf of the Class pursuant to 28 U.S.C. §1332, as amended in 2005 by the Class Action Fairness Act Subject matter jurisdiction is proper because: (1) the amount in controversy in this class action exceeds $5,000,000, exclusive of interest and costs; and (2) a substantial number of the members of the proposed class are citizens of a state different from that of Defendant, a corporation with its principal place of business in Stockton, California.

9.     This Court has personal jurisdiction over Defendant because it regularly conducts business in this District and purposefully avails itself of the laws of New York to market, promote, distribute, and sell the Products to consumers in New York and this District.

10.     Venue is proper in this District under 28 U.S.C. § 1391(a). Substantial acts in furtherance of the alleged improper conduct, including the dissemination of false and misleading information regarding the nature, quality, and/or ingredients of the Products, occurred within this District.

## PARTIES

11.     This is a nationwide consumer class action brought by Plaintiff on behalf of all individuals who purchased the Products for personal use and not for resale.

12.     During the relevant period, Class Members in New York and throughout the United States purchased the Products through numerous brick-and-mortar retail locations and online websites. Plaintiff and Class Members suffered an injury in fact caused by the false, fraudulent, unfair, deceptive, and misleading practices set forth in this Complaint.

13.     Plaintiff is a resident of Bronx County, New York. She purchased the Defendant's Products at a Whole Foods Market in New York, New York during the three years preceding the filing of this Complaint.

14.     Plaintiff purchased Defendant's Products because she saw the labeling, advertising, and

read the packaging, which represented that the products were "Made with Natural Ingredients" and contained "No preservatives." She relied on Defendant's false, misleading, and deceptive representations that the products were "Made with Natural Ingredients" and contained "No preservatives." Had she known the truth—that the representations she relied upon in making her purchases were false, misleading, and deceptive—she would not have purchased the products at a premium price.

15.     Defendant's statements are false and misleading to a reasonable consumer because, as set forth more fully herein, the Products contain a synthetic chemical and preservative, citric acid.

16.     Defendant is a corporation organized and existing under the laws of the State of California with its principal place of business in Stockton, California. Defendant manufactures, markets, advertises and distributes the Products throughout New York and the United States. Defendant created and/or authorized the false, misleading and deceptive advertisements, packaging and labeling for the Products.

## SUBSTANTIVE ALLEGATIONS

### Defendant's "No Preservatives" Representation Is False and Misleading To A Reasonable Consumer

17.     Defendant misleads consumers into thinking that the Products contain no preservatives with its false labeling claims to this effect. However, the Products actually contain citric acid, whose functions as a preservative have been well-documented.

18.     Citric acid is a preservative as the term is defined by the FDA in 21 C.F.R. § 101.22(a)(5): "The term chemical preservative means any chemical that, when added to food, tends to prevent or retard deterioration thereof, but does not include common salt, sugars, vinegars, spices, oils extracted from spices, substances added to food by direct exposure thereof to wood smoke, or chemicals applied for their insecticidal or herbicidal properties."

19.     The scientific evidence and FDA statements cited below establish that citric acid tends to prevent or retard the deterioration of food. This remains the case regardless of the subjective purpose for which this substance is added to the Product.

20.     Citric acid does not fall into any of the regulatory exemptions from the definition of a preservative.

21.     The FDA expressly classifies citric acid as a preservative in its "Overview of Food

Ingredients, Additives, and Colors" on the FDA's website[2]:

| Types of Ingredients | What They Do | Examples of Uses | Names Found on Product Labels |
|---|---|---|---|
| Preservatives | Prevent food spoilage from bacteria, molds, fungi, or yeast (antimicrobials); slow or prevent changes in color, flavor, or texture and delay rancidity (antioxidants); maintain freshness | Fruit sauces and jellies, beverages, baked goods, cured meats, oils and margarines, cereals, dressings, snack foods, fruits and vegetables | Ascorbic acid, *citric acid*, sodium benzoate, calcium propionate, sodium erythorbate, sodium nitrite, calcium sorbate, potassium sorbate, BHA, BHT, EDTA, tocopherols (Vitamin E) |

22.     The FDA's classification of citric acid as a preservative is further confirmed by its Warning Letter, dated October 6, 2010, to the manufacturer of the Chiquita brand "Pineapple Bites with Coconut" and "Pineapple Bites," which states, in pertinent part:

> "The 'Pineapple Bites' and 'Pineapple Bites with Coconut' products are further misbranded within the meaning of section 403(k) of the Act [21 U.S.C. 343(k)] in that they contain the chemical preservative ascorbic acid and citric acid but their labels fail to declare these preservatives with a description of their functions. 21 CFR 101.22." *See*, **EXHIBIT A**, FDA Warning Letter dated October 6, 2010.

23.     Citric acid's nature as a preservative is also acknowledged by insiders in the preservative manufacturing and distribution industries. FBC Industries, Inc. a manufacturer and supplier of FCC grade Citric Acid additives, acidulants, buffering agents and preservatives for the food and beverage industry, describes citric acid's function: "Citric acid is the most commonly used acidulant in the industry. As a food additive or food grade product, citric acid is used as a flavoring and preservative."[3]

24.     Citric acid functions as a preservative by serving as an acidulant. Citric acid kills microbes by reducing the pH of the product that it is added to. Microorganisms contaminating food generally multiply more slowly or not at all at lower PH levels.[4]

---

[2] http://www.fda.gov/Food/IngredientsPackagingLabeling/FoodAdditivesIngredients/ucm094211.htm

[3] http://www.fbcindustries.com/Citric_Acid.aspx

[4] "Acids as food additives serve a dual purpose, as acidulants and preservatives." DeMan, John M., Principles of Food Chemistry. AVI Publishing Co, Inc., 1999, p. 438; *see also*, Doores, S., 1993. Organic Acids. In: Davidson, P.M., Branen, A.L. (Eds.), *Antimicrobials in Foods*. Marcel Dekker, Inc., New York, pp. 95-136; *see also*, Nazer, A.I., et al. Combinations of Food Antimicrobials at Low Levels to Inhibit the Growth of Salmonella sv. Typhimurium: a Synergistic Effect? *Food Microbiology*

25.    Citric acid likewise functions as a preservative by serving as a sequestrant, i.e., it prevents oxidation and impedes microbial growth, thereby slowing degradation of food and beverages.[5]

26.    Citric acid further functions as a preservative by infiltrating and then weakening or killing microorganisms through direct antimicrobial effect.[6]

27.    In sum, with the use of citric acid, various effects such as (i) spoilage from bacteria, mold, fungi and yeast, (ii) changes in flavor, color and texture, (iii) browning and (iv) rancidity, can be prevented over the shelf-life of the food product.[7]

**Plaintiffs' Claims Are Not Preempted by the FDCA**

28.    Defendant's deceptive misrepresentations violate the FDCA, which provides that "[a] food shall be deemed misbranded if its labeling is false or misleading in any particular." 21 U.S.C. § 343 (a)(1).

29.    Plaintiff's claims are not preempted by the FDCA because the definition of "preservative" as used herein is identical with that of the FDA (see above). Moreover, FDA regulations specifically note that claims like "No Preservatives" are non-nutritive claims that are not governed by 21 C.F.R. §101.13. *See*, 21 C.F.R. § 101.65(b)(2). Since the FDA has not issued specific standards governing when "No Preservative" claims are either true or false, such representations fall outside the ambit of FDA regulations. Accordingly, Plaintiff's claim cannot possibly be preempted. *See*, Bimont v. Unilever U.S., Inc., No. 14-CV-7749 (JPO), 2015 U.S. Dist. LEXIS 119908, at *6 (S.D.N.Y. Sep. 9, 2015) ("[P]reemption does not preclude a state-law claim if the state requirement is outside the scope of the relevant federal requirements").

---

22.5 (2005) pp. 391-398.

[5] Igoe, Robert S., *Dictionary of Food Ingredients*. Springer Science & Business Media, 2001, p. 167; *see also*, DeMan, John M., Principles of Food Chemistry. AVI Publishing Co, Inc., 1999, p. 438.

[6] Juvonen, Riikka, et al. Microbiological Spoilage and Safety Risks in Non-Beer Beverages. *VTT Research Notes 2599* (2011), p. 73.

[7] Doores, S., 1993. Organic Acids. In: Davidson, P.M., Branen, A.L. (Eds.), *Antimicrobials in Foods*. Marcel Dekker, Inc., New York, pp. 95-136.

## Defendant's Misrepresentations Are Material to a Reasonable Consumer and Were Relied Upon by Plaintiff and the Class

30. Plaintiff and Class members reasonably relied on Defendant's representations that the Products are free of preservatives.

31. Defendant's misrepresentations are misleading and deceive reasonable consumers. At the point of sale, Plaintiff and Class members did not know, and had no reason to know, that the Products were misbranded as set forth herein. A representation that a product has "No Preservatives" is material to a reasonable consumer when deciding to purchase it. Plaintiff did, and a reasonable consumer would, attach importance to whether Defendant's Products have "No Preservatives" because it is common knowledge that consumers prefer to avoid foods with potentially unhealthy additives.

## Defendant Has an Intent to Mislead

32. Defendant would not include the representations on the labels of the Products if these representations would not influence consumer behavior.

33. By representing that the Products have "No Preservatives," Defendant seeks to capitalize on consumers' preference for less processed foods with fewer additives and the association between such products and a wholesome way of life. Consumers are willing to pay more for less processed products with no additives because of this association, as well as the perceived higher quality, health, and safety benefits associated with products labeled as being free of preservatives.

34. The marketing research firm Mintel reports that more and more Americans are concerned to avoid food containing preservatives:

> Foods bearing "free-from" claims are increasingly relevant to Americans, as they perceive the products as closely tied to health. New research from Mintel reveals that 84 percent of American free-from consumers buy free-from foods because they are seeking out more natural or less processed foods. In fact, 43 percent of consumers agree that free-from foods are healthier than foods without a free-from claim, while another three in five believe the fewer ingredients a product has, the healthier it is (59 percent).
>
> Among the top claims free-from consumers deem most important are trans-fat-free (78 percent) and **preservative-free** (71 percent).[8]

---

[8] http://www.mintel.com/press-centre/food-and-drink/84-of-americans-buy-free-from-foods-becausethey-believe-them-to-be-more-natural-or-less-processed

35. Alternet.org reports on research that shows that most Americans are willing to pay a premium price for healthier food options:

> Not only are consumers increasingly seeking out wholesome foods, they are willing to pay a premium for them. According to Nielsen's 2015 Global Health & Wellness Survey that polled over 30,000 people online, 88 percent of Americans are willing to pay more for healthier foods. Global sales of healthy food products are estimated to reach $1 trillion by 2017, according to Euromonitor.
>
> When it comes to what consumers will be seeking out more of over the coming year, it may amount to single word. "Just think of the word no," Seifer said. "No preservatives, no additives, no growth hormones."[9]

36. Defendant has a natural interest in misrepresenting its Products as free of preservatives given these trends addressed above, despite the presence of citric acid. The Products' misrepresentations provide a clear marketing advantage over competitors that do not engage in such deceptive conduct.

37. Defendant knows that its' "No Preservatives" representations on the Products are false and intends that they be relied upon by Plaintiff and the Class.

**Plaintiff and the Class Were Injured as The Result of Defendant's Deceptive Practices**

38. Plaintiff and the Class were injured when Defendant denied them the full benefit of their bargain. They paid money for Products that were represented to them as preservative-free, and then received Products that were preservative-laden, which have significantly less value. Plaintiff and the Class were thus deprived of the benefit of their bargain. They would not have purchased the Products, or would only have been willing to pay less for them, had they known the truth. Plaintiff and the Class were injured in an amount up to the purchase price, the difference between the actual value of the Products and the value of the Products as misrepresented to them by Defendant, to be determined by expert testimony at trial. Defendant's very inclusion of "No Preservatives" on the Products' labels is an acknowledgment that this increases the Products' perceived value. *See,* Orlander v. Staples, Inc., 802 F.3d 289, 302 (2d Cir. 2015) ("the issue of 'price premium' was relevant because it showed that plaintiffs paid more than they would have for the good but for the deceptive practices of the defendant-sellers"); Kacocha v. Nestle Purina Petcare Co., No. 15-CV-5489 (KMK), 2016 U.S. Dist. LEXIS 107097, at *51-52 (S.D.N.Y. Aug. 11, 2016) ("[I]n his Complaint, Plaintiff seeks monetary damages on the grounds that he 'would not have

---

[9] http://www.alternet.org/food/8-food-trends-watch-2016

paid the premium price he paid' to buy the Products had he 'known the truth.'…Case law makes clear that this is sufficient at the motion-to-dismiss phase for a § 349 claim to survive."); Koenig v. Boulder Brands, Inc., 995 F.Supp. 2d 274, 288-89 (S.D.N.Y. 2014) ("Plaintiffs claim that, but for Defendants' 'unfair and deceptive practices,' they—and the putative class—would not have purchased, or paid a price premium for, Smart Balance. Compl. ¶¶ 7, 81. Indeed, Plaintiffs claim that they paid price premiums specifically 'based on Defendants' misrepresentations,' and allege that they deserve damages in the amount of either the purchase prices, or the price premiums that they paid for Smart Balance. Id. ¶ 81. Accordingly, the Court finds that Plaintiffs have adequately alleged injury under GBL § 349…").

### Kettle Foods Cultivates a "Natural" Brand Image for the Products

39.     Kettle Foods knows that consumers seek out and wish to purchase whole, natural foods that do not contain artificial chemicals and are preservative-free, and that consumers will pay more for foods that they believe to be natural and preservative-free than they will pay for foods that they do not believe to be natural or preservative-free.

40.     A recent nationally representative Consumer Reports survey of 1,005 adults found that more than half of consumers usually seek out products with a "natural" food label, often in the false belief that they're produced without genetically modified organisms, hormones, pesticides, or artificial ingredients. *See,* Consumer Reports National Research Center, *Natural Food Labels Survey* (2015).[10]

41.     To capture this market, Kettle Foods has prominently made claims on their product labels that their chip Products are "natural" or statements of similar import, cultivating a wholesome and healthful image in an effort to promote the sale of these products.

42.     In particular, the back labels assert under the heading "**OUR NATURAL PROMISE**" that the products contain "No preservatives" and are "Made with Natural Ingredients." *See*, **Exhibit B**, annexed hereto.

43.     Upon information and belief, Kettle Foods has profited enormously from its falsely marketed Products and its carefully orchestrated label and image.

44.     Representing that a product is "natural" is a false statement of fact.

---

[10] *Available at* http://www.consumerreports.org/content/dam/cro/magazine-
articles/2016/March/Consumer_Reports_Natural_Food_Labels_Survey_2015.pdf.

45.     Consumers reasonably believe that a product or ingredient represented as "natural" does not contain synthetic chemicals.

## Citric Acid Is Not a Natural Ingredient

46.     Kettle Foods "Natural Promise" and representations that the Products are "Made with Natural Ingredients" are false.

47.     Citric acid (2-hydroxy-propane-1,2,3-tricarboxylic acid) is a synthetic, non-natural ingredient. While the chemical's name has the word "citric" in it, citric acid is no longer extracted from the citrus fruit but industrially manufactured by fermenting certain genetically mutant strains of the black mold fungus, *Aspergillus niger*.[11]

48.     A technical evaluation report for the substance, citric acid, compiled by the United States Department of Agriculture, Agriculture Marketing Service ("USDA AMS") for the National Organic Program, classified citric acid as "Synthetic Allowed." *See*, **Exhibit C**, annexed hereto.

49.     As one of the USDA AMS reviewers commented:

"[Citric acid] is a natural[ly] occurring substance that commercially goes through numerous chemical processes to get to [its] final usable form. This processing would suggest that it be classified as synthetic." *Id.* at 3.

50.     The report further explains, under the "How Made" question, that citric acid is made:

"Traditionally by extraction from citrus juice, no longer commercially available. It is now extracted by fermentation of a carbohydrate substance (often molasses) by citric acid bacteria, *Aspergillus niger* (a mold) or Candida guilliermondii (a yeast). Citric acid is recovered from the fermentation broth by a lime and sulfuric acid process in which the citric acid is first precipitated as a calcium salt and then reacidulated with sulfuric acid.

51.     Because citric acid is a synthetic acid and cannot be reasonably considered a natural ingredient, Defendants' "Natural Promise" and claims that the Products are "Made with Natural Ingredients" is false, deceptive, and misleading.

---

[11] *See, e.g.*, Belen Max, et al. *Biotechnological production of citric acid*, BRAZILIAN JOURNAL OF MICROBIOLOGY, 41.4 Sao Paolo (Oct./Dec. 2010)

**Kettle Foods' Labels Are Misleading and Omit Material Facts**

52.     Kettle Foods' "Natural Promise" and conduct in labeling or representing the Products as "Made with Natural Ingredients" deceived and/or was likely to deceive the public.

53.     Consumers were deceived into believing that the Products are natural and that nothing in the Products was not natural.

54.     Instead, the Products contain citric acid, a synthetic ingredient.

55.     Consumers cannot discover the true nature of the Products from reading the label.

56.     Discovery of the true nature of the content of the Products requires knowledge of chemistry that is not available to the average reasonable consumer.

57.     Kettle Foods deceptively and misleadingly conceals material facts about the Products, namely, that the Products are not "natural" because in fact the Products contain citric acid; and the Products are not what a reasonable consumer would consider "natural" because in fact they contain citric acid.

58.     Kettle Foods' concealment tolls the applicable statute of limitations.

**Kettle Foods Knew That Its Representations Were False**

59.     Consumers frequently rely on label representations and information in making purchase decisions, especially in purchasing food.

60.     Kettle Foods made the false, misleading, and deceptive representations and omissions intending for consumers to rely upon these representations and omissions in purchasing the Products.

61.     In making the false, misleading, and deceptive representations and omissions at issue, Kettle Foods knew and intended that consumers would purchase the Products when consumers would otherwise purchase a competing product.

62.     Consumers are not only willing to pay more for a product with ingredients that purport to be "natural" – they also expect that product to be free of synthetic ingredients.

63.     In making the false, misleading, and deceptive representations and omissions at issue, Kettle Foods also knew and intended that consumers would pay more for "natural" products that are free

of unnatural agents than they would pay for products that are not "natural," furthering Kettle Foods' private interest of increasing sales of its products and decreasing the sales of the natural products that are truthfully marketed by its competitors.

64.     Kettle Foods knows that consumers prefer "natural" ingredients, and foods that do not contain unnatural chemicals. Kettle Foods knows that consumers will pay more for "natural" foods or would not purchase the foods at all unless they were "natural" and free from unnatural chemicals.

65.     Similarly, independent surveys confirm that consumers will purchase more "natural" products than conventional products, and will pay more for "natural" products.

66.     On or about May 21, 2018, Plaintiff's counsel first provided Kettle Foods Pure with all the material allegations included in this Complaint. Kettle Foods was thus specifically notified that its Products labeled as "Made with Natural Ingredients" and containing "No preservatives" were misbranded. Kettle Foods thus knew all the facts demonstrating that its falsely labeled Products were falsely advertised. Kettle Foods made the false, deceptive, and misleading representations and omissions, intending for Plaintiff and the Class members to rely upon these representations and omissions in purchasing the falsely labeled Products.

67.     Upon information and belief, Kettle Foods has failed to remedy the problem with the Products, thus causing future harm to consumers.

68.     Kettle Foods has failed to provide adequate relief to members of the proposed classes as of the date of the filing of this Complaint.

69.     Plaintiff contends that the Products were sold pursuant to unfair and unconscionable trade practices because the sale of Kettle Foods Products offends public policy and is immoral, unethical, oppressive, unscrupulous, and caused substantial economic injuries to consumers.

70.     Reasonable consumers do not expect the Products, represented and advertised as "natural," to contain unnatural chemicals or ingredients such as citric acid. Defendant's statements and other representations convey a series of express and implied claims and/or omissions which Defendant knows are material to the reasonable consumer in making a purchasing decision, and which Defendant intended for consumers to rely upon when choosing to purchase the Products.

71.     Based on Defendant's misleading and deceptive representations, Defendant was able to, and did, charge a premium price for the Products over the cost of competitive products not bearing a "natural" label.

## CLASS ALLEGATIONS

72.     Plaintiff re-alleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

73.     Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of herself and all others similarly situated individuals within the United States (the "Class" or the "Nationwide Class"), defined as follows:

> All persons or entities in the United States who made retail purchases of the Products during the applicable limitations period, and/or such subclasses as the Court may deem appropriate.

74.     Additionally, Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of herself and all others similarly situated New York Citizens (the "New York Subclass"), defined as follows:

> All persons or entities who made retail purchases of the Products in New York during the applicable limitations period, and/or such subclasses as the Court may deem appropriate.

75.     Upon information and belief, the scope of the Class and Subclass definitions, including temporal scope, may be further refined after discovery of Defendant's and/or third party records.

76.     The Class and the New York Subclass will be referred to collectively throughout the Complaint as the "Class."

77.     Excluded from the Class are (1) Defendant, any entity or division in which Defendant has a controlling interest, and its legal representatives, officers, directors, assigns, and successors; and (2) the judge to whom this case is assigned and the judge's staff.

78.     All members of the Class were and are similarly affected by the deceptive advertising of the Defendant, and the relief sought herein is for the benefit of Plaintiff and members of the Class.

79.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

80.     **Numerosity – Federal Rule of Civil Procedure 23(a)(l).** At this time, Plaintiff does not know the exact number of the Class and Subclass members. Based on the annual sales and popularity of the Products, it is readily apparent that the number of consumers in the Class is so large as to make joinder impracticable, if not impossible. Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

81.     **Commonality and Predominance –Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class that predominate over questions that may affect individual Class members include:

    (a)     whether Kettle Foods misrepresented and/or failed to disclose material facts concerning the falsely labeled Products;

    (b)     whether Kettle Foods' conduct was unfair, misleading and/or deceptive; and

    (c)     whether Kettle Foods breached an express warranty created through the labeling and marketing of its falsely labeled Products;

    (d)     whether, as a result of Defendant's misconduct as alleged herein, Plaintiff and the Class suffered an ascertainable loss; and

    (e)     Whether Defendant was unjustly enriched at the expense of the Plaintiff and Class Members.

82.     With respect to the New York Subclass, additional questions of law and fact common to the members that predominate over questions that may affect individual members include:

    (a)     whether, in violation of § 349 of the New York General Business Law ("GBL"), Defendant engaged in deceptive acts or practices; and

    (b)     whether, in violation of GBL § 350, Defendant engaged in false advertising.

83.     Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff, on behalf of herself, and the other Class members. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if

any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action.

84.     Plaintiff's claims are typical of the claims of the Nationwide Class. Plaintiff is a member of a well-defined class of similarly situated persons and the members of the Nationwide Class were similarly affected by Defendant's conduct and are owed the same relief, as alleged in this Complaint. Members of the Nationwide Class are ascertainable from Plaintiff's description of the class, Defendant's records, and records of third parties accessible through discovery.

85.     Plaintiff's claims are typical of the claims of the New York Subclass. Plaintiff is a member of a well-defined class of similarly situated persons and the members of the New York Subclass were similarly affected by Defendant's conduct and are owed the same relief, as alleged in this Complaint. Members of the New York Subclass are ascertainable from Plaintiff's description of the class, Defendant's records, and records of third parties accessible through discovery.

86.     **Adequacy of Representation - Federal Rule of Civil Procedure 23(a)(4).** Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the Class members she seeks to represent, and she has retained counsel competent and experienced in both consumer protection and class action litigation. Plaintiff and her counsel will fairly and adequately protect the interests of the members of the Class. Undersigned counsel has represented consumers in a variety of actions where they have sought to protect consumers from fraudulent and deceptive practices.

87.     **Insufficiency of Separate Actions - Federal Rule of Civil Procedure 23(b)(l).** Absent a representative class action, members of the Class would continue to suffer the harm described herein, for which they would have no remedy. Even if separate actions could be brought by individual consumers, the resulting multiplicity of lawsuits would cause undue burden and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated purchasers, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for Defendant. The proposed Class thus satisfies the requirements of Fed. R. Civ. P. 23(b)(l).

88.     **Predominance and Superiority of Class Action.** The prerequisites to maintaining a class action pursuant to Federal Rule of Civil Procedure 23(b)(3) are met because questions of law and fact common to each Class member predominates over any questions affecting only individual members,

and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

89.     Individual joinder of the Class members is not practicable, and questions of law and fact common to the Class predominate over any questions affecting only individual Class members. Each Class member has been damaged and is entitled to recovery as a result of the violations alleged herein.

90.     Moreover, because the damages suffered by individual members of the Class may be relatively small, the expense and burden of individual litigation would make it difficult or impossible for individual Class members to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action. Class action treatment will allow those persons similarly situated to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system.

91.     Defendant's conduct is generally applicable to the Class and the New York Subclass as a whole and Plaintiff seeks, inter alia, equitable remedies with respect to the Class and the New York Subclass as a whole. As such, Defendant's systematic policies and practices make declaratory relief with respect to the Class and the New York Subclass as a whole appropriate.

92.     Plaintiff is unaware of any difficulties in managing this case that should preclude class action.

## CAUSES OF ACTION
### COUNT I

**Violation of New York General Business Law § 349: Mislabeling (On Behalf of the New York Subclass)**

93.     Plaintiff incorporates by reference all the allegations of the preceding paragraphs of this Complaint.

94.     New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

95.     The conduct of Defendant alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiff and the New York Subclass Members seek

monetary damages, compensatory damages, injunctive relief, restitution and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

96.    There is no adequate remedy at law.

97.    Defendant misleadingly, inaccurately, and deceptively presented their Products to consumers.

98.    Defendant's improper consumer-oriented conduct—including labeling and advertising the Products as being "Made with Natural Ingredients" and containing "No preservatives"—is misleading in a material way in that it, *inter alia*, induced Plaintiff and the New York Subclass Members to purchase and pay a premium for Defendant's Products and to use the Products when they otherwise would not have. Defendant made their untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

99.    Plaintiff and the New York Subclass Members have been injured inasmuch as they paid a premium for Products that were—contrary to Defendant's representations—not preservative-free and not "Made with Natural Ingredients" Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and/or paid for.

100.    Defendant's advertising, including online advertising, and the Products' packaging and labeling induced the Plaintiff and the New York Subclass Members to buy Defendant's Products and to pay a premium price for them.

101.    Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiff and the New York Sub-Class Members have been damaged thereby.

102.    As a result of Defendant's recurring, unlawful deceptive acts and practices, Plaintiff and the New York Sub-Class Members are entitled to monetary, compensatory, injunctive relief, restitution and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

THEREFORE, Plaintiff prays for relief as set forth below.

## COUNT II

### Violation of the New York General Business Law § 350
### (On Behalf of the New York Subclass)

103.    Plaintiff incorporates by reference all the allegations of the preceding paragraphs of this Complaint.

104.    The acts of Defendant, as described above, and each of them, constitute unlawful, deceptive and fraudulent business acts and practices.

105.    New York General Business Law § 350 provides: "False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

106.    GBL § 350-a defines "false advertising," in relevant part, as "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect."

107.    Plaintiff and the members of the New York Subclass are consumers who purchased the Products in New York.

108.    As sellers of goods to the consuming public, Defendant is engaged in the conduct of business, trade, or commerce within the intended ambit of GBL § 350.

109.    Defendant's representations made by statement, word, design, device, sound, or any combination thereof, and also the extent to which Defendant's advertising fails to reveal material facts with respect to the Products, as described above, constitute false advertising in violation of the New York General Business Law.

110.    Defendant's false advertising was knowing and intentional.

111.    Defendant's actions led to direct, foreseeable and proximate injury to Plaintiff and the New York Subclass.

112.    As a consequence of Defendant's deceptive marketing scheme, Plaintiff and the other members of the New York Subclass suffered an ascertainable loss, insofar as they would not have purchased the Products had the truth been known, or would have purchased the Products on different terms, or would otherwise purchase a competing product, and as a result of Defendant's conduct, they received products of less value than what they paid for.

113.    By reason of the foregoing, Defendant is liable to Plaintiff and the other members of the New York Subclass for actual damages, injunctive relief, attorneys' fees, and the costs of this suit.

THEREFORE, Plaintiff prays for relief as set forth below.

## COUNT III
### Breach of Express Warranty

114.    Plaintiff incorporates by reference all the allegations of the preceding paragraphs of this Complaint.

115.    Kettle Foods provided Plaintiff and other members of the Class with written express warranties including, but not limited to, warranties that its falsely labeled Products were "Made with Natural Ingredients" and contain "No preservatives."

116.    These affirmations of fact or promises by Kettle Foods relate to the goods and became part of the basis of the bargain.

117.    Plaintiff and members of the Class purchased the falsely labeled Products believing them to conform to the express warranties.

118.    Kettle Foods breached these warranties. This breach resulted in damages to Plaintiff and other members of the Class, who bought the falsely labeled Products but did not receive the goods as warranted.

119.    Plaintiff and the members of the Class performed all conditions precedent to Defendant's liability under this contract when they purchased the Products.

120.    Plaintiff, on behalf of herself and the Class, provided Defendant with pre-suit notice of their breach of the express warranties provided on the label of the Products.

121.    By providing pre-suit notice, Plaintiff has effectively notified the Defendant of the troublesome nature of their transactions within a reasonable time of discovering the breach.

122.    Despite providing the above notice to the Defendant that the Products do not meet Defendant's warranties and in fact fail in many respects to perform consistent with the Products' representations, Defendant continues to hide the facts from consumers and fails to correct the material misrepresentations regarding the Products.

123.    Actual and/or constructive notice was duly given to Defendant of the breaches of these warranties, and Defendant has yet failed to cure.

124.    As a proximate result of the breach of warranties by Kettle Foods, Plaintiff and the other members of the Class did not receive goods as warranted. Plaintiff and the members of the Class therefore have been injured and have suffered damages in an amount to be proven at trial. Among other things, Plaintiff and members of the Class did not receive the benefit of the bargain and have suffered other injuries as detailed above. Moreover, had Plaintiff and the Class members known the true facts, they would not have purchased the products, would have purchased fewer products, or would not have been willing to pay the premium price Kettle Foods charged for the products.

THEREFORE, Plaintiff prays for relief as set forth below.

## COUNT IV

### Violation of State Consumer Protection Statutes

125.    Plaintiff incorporates by reference all the allegations of the preceding paragraphs of this Complaint.

126.    Plaintiff and Class Members have been injured as a result of Defendant's violations of the following state consumer protection statutes, which also provide a basis for redress to Plaintiff and Class Members based on Defendant's fraudulent, deceptive, unfair and unconscionable acts, practices and conduct.

127.    Defendant's conduct as alleged herein violates the consumer protection, unfair trade practices and deceptive acts laws of each of the following jurisdictions:

a.      **Alaska:** Defendant's practices were and are in violation of Alaska's Unfair Trade Practices and Consumer Protection Act, Alaska Stat. § 45.50.471, *et seq.*

b.      **Arizona:** Defendant's practices were and are in violation of Arizona's Consumer Fraud Act, Ariz. Rev. Stat. Ann. §§ 44-1521, *et seq.*

c.      **Arkansas:** Defendant's practices were and are in violation of Arkansas Code Ann. § 4-88-101, *et seq.*

d.      **California:** Defendant's practices were and are in violation of California Consumer Legal Remedies Act, Civil Code § 1750, *et seq.*, and California's Unfair Competition Law, California Business and Professions Code § 17200, *et seq.*

e.      **Colorado:** Defendant's practices were and are in violation of Colorado's Consumer Protection Act, Colo. Rev. Stat. §§ 61-1-101, *et seq.*

f.      **Connecticut:** Defendant's practices were and are in violation of Connecticut's Gen. Stat. § 42-11Oa, *et seq.*

g.      **Delaware:** Defendant's practices were and are in violation of Delaware's Consumer Fraud Act, Del. Code Ann. tit. 6, § 2511, *et seq.* and the Deceptive Trade Practices Act, Del. Code Ann. tit. 6, § 2531, *et seq.*

h.      **District of Columbia:** Defendant's practices were and are in violation of the District of Columbia's Consumer Protection Act, D.C. Code § 28-3901, *et seq.*

i.      **Florida:** Defendant's practices were and are in violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, *et seq.*

j.      **Hawaii:** Defendant's practices were and are in violation of the Hawaii's Uniform Deceptive Trade Practices Act, Haw. Rev. Stat. § 481A-1, *et seq.* and Haw. Rev. Stat. § 480-2.

k.      **Idaho:** Defendant's practices were and are in violation of Idaho's Consumer Protection Act, Idaho Code Ann. § 48-601, *et seq.*

l.      **Illinois:** Defendant's acts and practices were and are in violation of Illinois' Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/2; and Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. 510/2.

m.      **Indiana:** Defendant's practices were and are in violation of Indiana's Deceptive Consumer Sales Act, Ind. Code Ann. § 24-5-0.5-1, *et seq.*

n.      **Kansas:** Defendant's practices were and are in violation of Kansas's Consumer Protection Act, Kat. Stat. Ann. § 50-623, *et seq.*

o.      **Kentucky:** Defendant's practices were and are in violation of Kentucky's Consumer Protection Act, Ky. Rev. Stat. Ann. § 367.110, *et seq.*

p.      **Maine:** Defendant's practices were and are in violation of the Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. Ann. Tit. 5, § 205-A, *et seq.* and 10 Me. Rev. Stat. Ann. § 1101, *et seq.*

q.      **Maryland:** Defendant's practices were and are in violation of Maryland's Consumer Protection Act, Md. Code Ann. Com. Law § 13-101, *et seq.*

r.      **Massachusetts:** Defendant's practices were unfair and deceptive acts and practices in violation of Massachusetts' Consumer Protection Act, Mass. Gen. Laws ch. 93A, § 2.

s.      **Michigan:** Defendant's practices were and are in violation of Michigan's Consumer Protection Act, Mich. Comp. Laws Ann. § 445.901, *et seq.*

t.      **Minnesota:** Defendant's practices were and are in violation of Minnesota's Prevention of Consumer Fraud Act, Minn. Stat. § 325F.68, *et seq.* and the Unlawful Trade Practices law, Minn. Stat. § 325D.09, *et seq.*

u.     **Missouri:** Defendant's practices were and are in violation of Missouri's Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq.*

v.     **Nebraska:** Defendant's practices were and are in violation of Nebraska's Consumer Protection Act, Neb. Rev. Stat. § 59-1601, *et seq.* and the Uniform Deceptive Trade Practices Act, § 87-302, *et seq.*

w.     **Nevada:** Defendant's practices were and are in violation of Nevada's Deceptive Trade Practices Act, Nev. Rev. Stat. Ann. §§ 598.0903 and 41.600.

x.     **New Hampshire:** Defendant's practices were and are in violation of New Hampshire's Regulation of Business Practices for Consumer Protection, N.H. Rev. Stat. Ann. § 358-A:1, *et seq.*

y.     **New Jersey:** Defendant's practices were and are in violation of New Jersey's Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1, *et seq.*

z.     **New Mexico:** Defendant's practices were and are in violation of New Mexico's Unfair Practices Act, N.M. Stat. Ann. § 57-12-1, *et seq.*

aa.     **North Carolina:** Defendant's practices were and are in violation of North Carolina's Unfair Deceptive Trade Practices Act, N.C.Gen. Stat. Ann. § 75-1, *et seq.*

bb.     **North Dakota:** Defendant's practices were and are in violation of North Dakota's Unlawful Sales or Advertising Practices law, N.D. Cent. Code § 51-15- 01, *et seq.*

cc.     **Ohio:** Defendant's practices were and are in violation of Ohio's Consumer Sales Practices Act, Ohio Rev. Code Ann. § 1345.01, *et seq.* and Ohio's Deceptive Trade Practices Act. Ohio Rev. Code Ann. § 4165.01, *et seq.*

dd.     **Oklahoma:** Defendant's practices were and are in violation of Oklahoma's Consumer Protection Act, Okla. Stat. Ann. tit. 15 § 751, *et seq.,* and Oklahoma's Deceptive Trade Practices Act, Okla. Stat. Ann. tit. 78 § 51, *et seq.*

ee.     **Oregon:** Defendant's practices were and are in violation of Oregon's Unlawful Trade Practices law, Or. Rev. Stat. § 646.605, *et seq.*

ff.     **Pennsylvania:** Defendant's practices were and are in violation of Pennsylvania's Unfair Trade Practice and Consumer Protection Law, 73 Pa. Stat. Ann. § 201-1, *et seq.*

gg.     **Rhode Island:**  Defendant's practices were and are in violation of Rhode Island's Deceptive Trade Practices Act, R.I. Gen. Laws § 6-13.1-1, *et seq.*

hh.     **South Dakota:**  Defendant's practices were and are in violation of South Dakota's Deceptive Trade Practices and Consumer Protection Act, S.D. Codified Laws § 37-24-1, *et seq.*

ii.     **Texas:**  Defendant's practices were and are in violation of Texas' Deceptive Trade Practices Consumer Protection Act, Tex. Bus. & Com. Code Ann. § 17.41, *et seq.*

jj. **Utah:** Defendant's practices were and are in violation of Utah's Consumer Sales Practices Act, Utah Code Ann. § 13-11-1, *et seq.,* and Utah's Truth in Advertising Law, Utah Code Ann. § 13-lla-1, *et seq.*

kk. **Vermont:** Defendant's practices were and are in violation of Vermont's Consumer Fraud Act, Vt. Stat. Ann. tit. 9 § 2451, *et seq.*

ll. **Washington:** Defendant's practices were and are in violation of Washington Consumer Protection Act, Wash. Rev. Code Ann. § 19.86, *et seq.*

mm. **West Virginia:** Defendant's practices were and are in violation of West Virginia's Consumer Credit and Protection Act, W. Va. Code §4≥6A-6-101, *et seq.*

nn. **Wisconsin:** Defendant's practices were and are in violation of Wisconsin's Consumer Act, Wis. Stat. §421.101, *et seq.*

oo. **Wyoming:** Defendant's practices were and are in violation of Wyoming's Consumer Protection Act, Wyo. Stat. Ann. §40-12-101, *et seq.*

128.     Defendant's misrepresentations were material to Plaintiff's and Class Members' decision to pay a premium for the Products.

129.     Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

130.     As a result of Defendant's violations of the aforementioned states' unfair and deceptive practices laws, Plaintiff and Class Members paid a significant premium for the Products as compared to products serving the same purpose.

131.     As a result of Defendant's violations, Defendant has been unjustly enriched.

132.     Pursuant to the aforementioned states' unfair and deceptive practices laws, Plaintiff and Class Members are entitled to recover compensatory damages, restitution, punitive and special damages including but not limited to treble damages, reasonable attorneys' fees and costs and other injunctive or declaratory relief as deemed appropriate or permitted pursuant to the relevant law.

## COUNT V

### Violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*

133.     Plaintiff incorporates by reference all the allegations of the preceding paragraphs of this Complaint.

134.   Plaintiff brings this claim individually and on behalf of all members of the Class.

135.   Upon certification, the Class will consist of more than 100 named Plaintiffs.

136.   The Magnuson-Moss Warranty Act provides a federal remedy for consumers who have been damaged by the failure of a supplier or warrantor to comply with any obligation under a written warranty or implied warranty, or other various obligations established under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq*.

137.   The Products are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

138.   Plaintiff and other members of the Class are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

139.   Defendant is a "supplier" and "warrantor" within the meaning of the Magnuson- Moss Warranty Act, 15 U.S.C. §§ 2301(4) & 2301(5).

140.   Defendant represented in writing that the Products are "Made with Natural Ingredients" and contain "No preservatives."

141.   These statements were made in connection with the sale of the Products and relate to the nature of the Products and affirms and promises that the Products are as represented and defect free and, as such, are "written warranties" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6)(A).

142.   As alleged herein, Defendant breached the written warranty by selling consumers Products that are not "Made with Natural Ingredients" and are not preservative-free.

143.   The Products do not conform to the Defendant's written warranty and therefore violate the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq*. Consequently, Plaintiff and the other members of the Class have suffered injury and are entitled to damages in an amount to be proven at trial.

## COUNT VI

### Breach of Implied Warranty of Fitness for a Particular
Purpose

144.    Plaintiff incorporates by reference all the allegations of the preceding paragraphs of this
Complaint.

145.    Defendant knew or had reason to know that the Plaintiff and other Class Members were
buying its Products with the specific purpose of buying products that contained "natural" ingredients and
were preservative-free.

146.    Plaintiff and the other Class Members, intending to use wholly pure and natural products,
relied on the Defendant in selecting its Products to fit their specific intended use.

147.    Defendant held itself out as having particular knowledge of the Defendant's Products'
ingredients.

148.    Plaintiff and Class Members' reliance on Defendant in selecting Defendant's Products to
fit their particular purpose was reasonable given Defendant's claims and representations in its advertising,
packaging and labeling concerning the Products' ingredients.

149.    Plaintiff and the other Class Members' reliance on Defendant in selecting Defendant's
Products to fit their particular use was reasonable given Defendant's particular knowledge of the Products
it manufactures and distributes.

150.    As a result of the foregoing, Plaintiff and Class Members have been damaged in the
amount paid for the Defendant's Products, together with interest thereon from the date of purchase.

## COUNT VII

### Common Law Fraud

151.    Plaintiff incorporates by reference all the allegations of the preceding paragraphs of this
Complaint.

152.    Defendant intentionally makes materially false and misleading representations regarding
the nature of the Products.

153.    Plaintiff and Class members reasonably relied on Defendant's false and misleading
representations. They did not know, and had no reason to know, that the Products contain preservatives

and synthetic ingredients. They would not have purchased the Products had they known the truth.

154.     Defendant knew and intended that Plaintiff and the Class members would rely on its misrepresentations.

155.     Plaintiff and Class members have been injured as a result of Defendant's fraudulent conduct.

156.     Defendant is liable to Plaintiffs and Class members for damages sustained as a result of Defendant's fraud.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment on behalf of herself, the Nationwide Class and the New York Subclass, providing such relief as follows:

A.     An order certifying the proposed Nationwide Class and the New York Subclass; appointing Plaintiff as representative of the Nationwide Class; appointing Plaintiff as representative of the New York Subclass; and appointing Plaintiff's undersigned counsel as Class counsel for the Class and Subclass;

B.     A declaration that Defendant is financially responsible for notifying Class and Subclass members of the pendency of this suit;

C.     An order requiring proper, complete, and accurate labeling of the Products;

D.     Actual damages pursuant to New York General Business Law §§ 349 and 350;

E.     Monetary damages, injunctive relief, and actual damages in the maximum amount provided by law;

F.     Punitive damages in accordance with proof and in an amount consistent with applicable precedent;

G.     An order awarding Plaintiff and the other Class members the reasonable costs and expenses of suit, including their attorneys' fees; and

H.     Any further relief that the Court may deem appropriate.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury. Plaintiff also respectfully requests leave to amend this Complaint to conform to the evidence, if such amendment is needed for trial.

DATED: June 16, 2018

**GABRIELLI LEVITT LLP**

Michael J. Gabrielli (MG-2421)
michael@gabriellilaw.com
2426 Eastchester Rd., Ste. 103
Bronx, New York 10469
Telephone: (718) 708-5322
Facsimile: (718) 708-5966

*Counsel for Plaintiff and the Proposed Class*